IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HERBERT RUPPRECHT,
      Petitioner,

vs.                                  Case No.:  3:10cv526/MCR/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 5). Respondent filed a motion to dismiss the petition as untimely, with relevant portions of the state court record (docs. 34, 47–49). Petitioner filed a response in opposition to the motion (*see* doc. 36). Petitioner subsequently filed a "Motion to Expose to Court Newly Discovered Evidence," a motion for hearing on that motion, a "Motion to Clarify," and a "Motion to Quash State's Motion to Dismiss as Untimely" (docs. 38, 39, 41, 42).

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is established by the state court record (docs. 34, 47–49).[1] Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2000-CF-2239, with nine counts of sexual battery with the victim helpless to resist, and with all

---

[1] Hereinafter all citations to the state court record refer to the electronically filed exhibits to Respondent's motion to dismiss (docs. 47–49), unless otherwise indicated. If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

counts involving the same victim (Ex. B at 6–8).  The State nolle prossed one count (*see id.* at 89–90).  A jury trial was held on May 2–3, 2001 (Ex. C).  Much of the State's evidence consisted of the victim's testimony and videotapes depicting Petitioner performing sexual acts on the victim while she appeared to be unconscious (*id.*).  The jury deliberated forty-five (45) minutes, after which Petitioner was found guilty as charged (*see* Ex. A, docket entry dated 05/03/2001; Ex. B at 112–15, Ex. C).  On July 23, 2001, Petitioner was adjudicated guilty and sentenced to concurrent terms of 360 months in prison on Counts 1–4, concurrent terms of 360 months in prison on Counts 5–7, to run consecutively to the sentences on Counts 1–4, and a term of 306 months in prison on Count 8, to run consecutively to the sentences on Counts 5–7 (Ex. B at 187–207, 252–59).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D01-3131 (*see* Ex. B at 269).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. D).  Petitioner filed a pro se initial brief (Ex. E).  On February 24, 2003, the First DCA affirmed the judgment per curiam without written opinion (Ex. H).  <u>Rupprecht v. State</u>, 843 So. 2d 264 (Fla. 1st DCA 2003) (Table).  The First DCA denied Petitioner's motion for rehearing on April 15, 2003, and the mandate issued May 1, 2003 (Ex. I, Ex. J at 23).  Petitioner did not seek further review.

On May 29, 2003, Petitioner filed a motion for modification or reduction of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. WW).  The state circuit court denied the motion on July 1, 2003 (*see* Ex. A, docket entry dated 07/01/2003).

On December 23, 2003, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. J at 1–8).  The state circuit court denied the motion on March 24, 2004 (*id.* at 9–13).  Petitioner appealed the decision to the First DCA, Case No. 1D04-1580 (Ex. J at 36, Ex. K).  The First DCA affirmed the decision per curiam without written opinion on September 14, 2004, with the mandate issuing November 15, 2004 (Exs. M, O).  <u>Rupprecht v. State</u>, 884 So. 2d 940 (Fla. 1st DCA 2004) (Table).

On March 17, 2005, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel, Case No. 1D05-1293 (Ex. P).  The First DCA denied the petition on the merits on June 30, 2005 (Ex. Q).  <u>Rupprecht v. State</u>, 909 So. 2d 333 (Fla. 1st DCA 2005)

Petitioner filed a motion for rehearing, which was denied on August 29, 2005.  *Id.*  Petitioner sought discretionary review in the Florida Supreme Court, Case No. SC05-1686, but the court dismissed the petition for review on September 21, 2005, for lack of jurisdiction (Ex. S).  Rupprecht v. State, 913 So. 2d 598 (Fla. 2005).  On May 12, 2006, Petitioner filed a motion for belated rehearing in the First DCA, Case No. 1D05-1293.  *See* Rupprecht v. State, 909 So. 2d 333, online docket entry 05/12/2006.  The First DCA denied the motion on June 7, 2006.  *Id.*, online docket entry 06/07/2006.  Petitioner filed another motion for rehearing on June 13, 2006 (Ex. R).  The First DCA denied the motion on July 20, 2006 (*id.*).

Petitioner filed a second Rule 3.800(a) motion in the state circuit court on September 15, 2005 (Ex. T at 1–6).  On July 14, 2006, the state circuit court entered an order correcting Petitioner's sentencing scoresheet but denying Petitioner's request for resentencing (*id.* at 42–48).  Petitioner appealed the decision to the First DCA, Case No. 1D06-4285 (Ex. T at 91, Ex. U).  The First DCA affirmed per curiam without written opinion on February 5, 2007, with the mandate issuing April 17, 2007 (Exs. V, X).  Rupprecht v. State, 952 So. 2d 1196 (Fla. 1st DCA 2007) (Table).

On September 5, 2006, during the pendency of the prior proceeding, Petitioner filed a petition in the state circuit court seeking permission to file a belated motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. Y).  Following an evidentiary hearing, the state circuit court granted the petition (Ex. Z).  The state court deemed Petitioner's Rule 3.850 motion as filed on June 29, 2007 (*id.*).  After numerous amendments to the motion, the state circuit court summarily denied it on May 4, 2009 (Ex. AA at 561–84).  Petitioner appealed the decision to the First DCA, Case No. 1D09-2789 (Ex. AA at 1125, Ex. BB).  The First DCA affirmed per curiam without written opinion on November 16, 2009, with the mandate issuing February 2, 2010 (Exs. EE, FF, GG).  Rupprecht v. State, 25 So. 3d 1229 (Fla. 1st DCA 2009) (Table).  Petitioner sought discretionary review in the Florida Supreme Court, Case No. SC10-573, but the court dismissed the petition for review on April 5, 2010, for lack of jurisdiction (Ex. HH). Rupprecht v. State, 34 So. 3d 2 (Fla. 2010).

On February 23, 2010, Petitioner filed another motion for correction, reduction, or modification of sentence, pursuant to Rule 3.800(a), (c) (Ex. II at 1–16).  The state circuit court dismissed the motion on March 3, 2010 (*id.* at 38–39).  Petitioner appealed the decision to the First

DCA, Case No. 1D10-1469 (Ex. II at 40, Ex. JJ).  The First DCA affirmed per curiam without written opinion on April 30, 2010, with the mandate issuing May 26, 2010 (Exs. LL, MM). Rupprecht v. State, 34 So. 3d 7 (Fla. 1st DCA 2010) (Table).

On August 31, 2010, Petitioner filed a petition for writ of habeas corpus in the state circuit court (Ex. NN at 1–54).  The state circuit court dismissed the petition on October 5, 2010, on the ground that Petitioner sought the kind of collateral post-conviction relief available through a Rule 3.850 motion and, if considered a Rule 3.850 motion, it was untimely and successive (Ex. OO at 1–3).  Petitioner filed a "Motion for Rehearing, Motion for Extension of Time, and if Motion for Rehearing is Denied, Motion for Appeal" (Ex. SS).  On January 13, 2011, the state circuit court dismissed the motion for rehearing as untimely, and denied the motion for extension of time for lack of jurisdiction (Ex. TT).  On January 21, 2011, Petitioner filed a petition for belated appeal in the First DCA, Case No. 1D11-0451(Ex. PP at 1–4).  The First DCA denied the petition on April 27, 2011(Ex. QQ).  Rupprecht v. State, 65 So. 3d 14 (Fla. 1st DCA 2011).  Petitioner's motion for rehearing was denied May 10, 2011 (Ex. VV).

Petitioner filed his federal habeas petition on January 20, 2011 (doc. 5 at 1).  He asserts the following grounds for relief:

> Ground One:  The trial was invalid, null, and void, because the prosecutor was not qualified to hold his position (he was not "sworn to office and oath"), and one of the judges who presided over a pre-trial matter "came out of retirement and was not resworn" (see doc. 5 at 15–16).

> Ground Two:  The affidavits supporting the search warrants and probable cause affidavit were based upon statements from witnesses who were not sworn under oath, thereby depriving the trial court of jurisdiction (see doc. 5 at 16–17).

> Ground Three:  The victim stole evidence (videotapes) from his home and delivered them to police, who then viewed the videotapes without a warrant and used them as a basis for obtaining search warrants, which led to the seizure of videotapes, photographs, undeveloped film, swords, a tobacco pipe, an axe, bed sheets, and a computer (see doc. 5 at 18–20).

> Ground Four:  Trial counsel (Mr. Arnold) failed to conduct a full and complete voir dire of potential jurors by failing to question them regarding their exposure to pre-trial publicity, and failing to challenge four jurors for cause or use peremptory

challenges to strike them based upon information they provided during voir dire (*see* doc. 5 at 21–25).

Ground Five:  The trial court erred by failing to discharge a sleeping juror (*see* doc. 5 at 26).

Ground Six:  Trial counsel was ineffective for failing to file a motion to limit the testimony of Fred Parker, failing to depose Mr. Parker, and failing to object when the prosecutor elicited inadmissible testimony from Mr. Parker (*see* doc. 5 at 27). Additionally, the police withheld information that Mr. Parker was providing testimony for the State in three other cases in hopes of obtaining leniency in his own criminal case (*id.*).  The prosecutor did not inform defense counsel of this information until ten (10) days after trial (*see* doc. 5-1 at 6), which was insufficient to give Petitioner's new counsel time to prepare for the hearing on the defense's motion for new trial (*id.*).

Ground Seven:  The charging document, probable cause affidavit, and pre-sentence investigation report contained erroneous information and allegations which were not sworn to as true (*see* doc. 5 at 28).  Trial counsel was ineffective for failing to seek dismissal of the charges on that ground (*id.*).

Ground Eight:  The convictions violated the First and Ninth Amendments, because the underlying conduct occurred with another adult in the privacy of Petitioner's bedroom (*see* doc. 5 at 29).

Ground Nine:  The trial judge and another judge who presided over pre-trial matters should have recused themselves, because they were familiar with the victim (through prior domestic violence and child abuse proceedings) (*see* doc. 5 at 29–30).  The trial judge made comments during sentencing that showed he was biased against Germans (Petitioner states he is German) (*id.*).

Ground Ten:  Several errors occurred at sentencing:  (1) the State agreed to several corrections of the pre-sentence investigation report, which vitiated allegations in the charging document and rendered it null and void; (2) a "corrected" copy of the pre-sentence investigation report was not provided ten days before sentencing; (3) the sentencing court ignored the recommendation of the "sentencing specialist"; and (4) Petitioner never received a "corrected" copy of the pre-sentence investigation report (*see* doc. 5 at 30–32).

Ground Eleven:  Petitioner's ability to file a Rule 3.850 motion and a timely federal habeas petition was impeded by post-conviction counsel's abandonment of his case (*see* doc. 5 at 32).

Ground Twelve:  The cumulative effect of the errors identified in Grounds One through Ten, together with improper comments by the prosecutor during trial, rendered his trial "an inquisition" (*see* doc. 5 at 33–35).

Ground Thirteen: The State violated his right to compulsory process and to confront witness by "releasing" Mr. Vincent Depirro from jail prior to the hearing on the defense's motion for new trial on July 23, 2001 (*see* doc. 5 at 36).  Defense counsel, Mr. Arnold, deposed Mr. Depirro, as well as another inmate, Mr. McNair, prior to the hearing on the motion for new trial (*see* doc. 5-2 at 25–52, 55; doc. 32-2 at 32–33).  Mr. McNair testified at the hearing on the motion for new trial (*see* doc. 32-2 at 33), but Mr. Depirro did not.  The State's releasing Mr. Depirro from jail prevented defense counsel from presenting Depirro's testimony at the hearing (doc. 36-2 at 1–3).

(doc. 5 at 15–36).

II.    ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends the appropriate statutory trigger for the federal limitations period in this case is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review (doc. 34 at 4–5).

Respondent contends the appellate court denied Petitioner's motion for rehearing on April 15, 2003, and the judgment became final ninety (90) days later, on July 14, 2003 (*see id.* at 5).

Petitioner does not expressly argue that a different statutory trigger for the federal limitations period applies. However, he appears to suggest the State created an impediment to his filing by failing to provide the transcript of a pre-trial hearing and failing to provide photographs taken by the Pensacola Police Department. He states he did not receive a transcript of a pre-trial suppression hearing over which Judge Anderson presided until 2006 or 2007 (doc. 5 at 4; doc. 36 at 5).[2] However, the docket demonstrates that a transcript of the hearing, held on November 21, 2000, was filed with the clerk of court on November 29, 2000 (*see* doc. 34, Ex. A, docket entries 11/21/2000, 11/29/2000; doc. 36-2 at 12). A copy was thus available to Petitioner, albeit perhaps at cost, well before July of 2003, when his conviction became final. The fact that Petitioner did not actually obtain a copy until later in 2006 (*see* doc. 36-2 at 13, 20) does not suggest the State prevented him from obtaining it earlier. Similarly, Petitioner states he did not receive photographs taken by the Pensacola Police Department ("PPD") until March 6, 2009. The record demonstrates the existence of the photographs was disclosed to the defense during discovery in the PPD's supplemental report (*see* doc. 5-1 at 12, 20–32). Further, the photographs were available to Petitioner June 6, 2002 (*see* doc. 36-2 at 9), well before his conviction became final in July of 2003. Again, the fact that Petitioner did not secure possession of the photographs until 2008 (*see* doc. 5-1 at 33–34) does not suggest the State prevented him from doing so earlier. Therefore, Petitioner failed to demonstrate that § 2244(d)(1)(B) is the appropriate statutory trigger for the limitations period.

Further, upon review of his habeas claims, the undersigned concludes the factual predicate of each claim challenging the constitutionality of his conviction could have been discovered through the exercise of due diligence prior to July 16, 2003 (doc. 5 at 15–36).[3] Therefore, Petitioner has not

---

[2] According to Petitioner, Judge Anderson granted in part the defense's motion to suppress evidence discovered in Petitioner's home in Pensacola, Florida, and a truck in Tennessee; Petitioner states Judge Anderson granted the motion to suppress as to CD's and property seized from the truck in Tennessee (doc. 5 at 18).

[3] In Ground Eleven, Petitioner does not assert a claim for federal habeas relief; instead he asserts an argument for equitable tolling of the federal limitations period (doc. 5 at 32, 59). Petitioner claims that his ability to file a Rule 3.850 motion and a timely federal habeas petition was impeded by post-conviction counsel's abandonment of his case (*id.* at 32). Because Ground Eleven is not a habeas claim, that is, it does not challenge the constitutionality of Petitioner's conviction and instead only asserts grounds for equitable tolling, the date Petitioner discovered the factual

demonstrated that § 2244(d)(1)(D) applies.  Moreover, none of Petitioner's claims are based upon a constitutional right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, *see* § 2244(d)(1)(C).  Therefore, the undersigned concludes the appropriate trigger for the federal limitations period is the date Petitioner's conviction became final, pursuant to § 2244(d)(1)(A).

Petitioner's conviction became final on July 15, 2003, upon expiration of the 90-day period in which Petitioner could have filed a petition for a writ of certiorari. [4]  *See* U.S. Sup. Ct. R 13.3 ("if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing . . ."); Chavers v. Secretary, Florida Dept. of Corrections, 468 F.3d 1273, 1274–75 (11th Cir. 2006) (judgment of conviction becomes "final" after the expiration of the 90-day period in which the petitioner could have filed a petition for a writ of certiorari, which begins to run on the date of the appellate court's affirmance of the conviction, not the date of the appellate court's mandate) (citing Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (judgment became "final" ninety days after state supreme court denied defendant's motion for rehearing)); *see also, e.g.*, Hollinger v. Sec'y, Dep't of Corr., 334 F. App'x 302, 303, 2009 WL 1833746, at *1 (11th Cir. 2009) (petitioner's conviction became final ninety days after rehearing on direct appeal was denied);[5] Werley v. Crosby, 2007 WL 1191913, at  *4 (N.D. Fla. Apr. 19, 2007) (because the date of the First DCA's order denying petitioner's motion for rehearing was May 21, 2002, petitioner's judgment of conviction became "final" for purposes of section 2244 on August 19, 2002, ninety days later). The statute of limitations began to run on July 16, 2003, the day after the 90-day period expired. *See* Wainwright v. Sec'y, Dep't of Corr., 537 F.3d 1282, 1283–84 (11th Cir.2007) (citing Fed. R.

---

predicate of Ground eleven is irrelevant to the determination of the appropriate trigger for the statute of limitations.

[4] Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that triggers the time period is excluded from the calculation, and the last day of the period is included, so the 90–day period expired on July 15, 2003.

[5] The undersigned cites Hollinger only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

Civ. P. 6(a)); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA). Petitioner had one year from that date, or until July 16, 2004, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)). Petitioner did not file his federal petition on or before that date; therefore, it is untimely unless tolling principles apply and render it timely.

Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). "[T]he phrase 'collateral review' in § 2244 (d) (2) means judicial review of a judgment in a proceeding that is not part of direct review." Wall v. Kholi, — U.S. — 131 S. Ct. 1278, 1282, 179 L. Ed. 2d 252 (2011). "Viewed as a whole, then, 'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." 131 S. Ct. at 1285. The Supreme Court in Kholi commented that a motion for post-conviction discovery or a motion for appointment of counsel, unlike the motion to reduce sentence before it, was not a "direct request[ ] for judicial review of a judgment and do[es] not provide a state court with authority to order relief from a judgment." 131 S. Ct. at 1286 n.4.

On December 23, 2003, after **160 days** of the federal limitations period elapsed, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a). Respondent concedes this was a tolling motion (doc. 34 at 5). The Rule 3.800(a) motion was pending until the First DCA issued the mandate on November 15, 2004.[6]

---

[6] Petitioner filed a motion for modification or reduction of sentence, pursuant to Rule 3.800(c), on May 29, 2003. Arguably, it did not qualify as a tolling motion. *See* Baker v. McNeil, No. 09–14438, 2011 WL 3612035, at *2–3 (11th Cir. Aug. 17, 2011) (unpublished). However, giving Petitioner the benefit of tolling for that motion, the federal limitations period was tolled until July 1, 2003, the date the state circuit court denied it. *See* Martinez v. State, — So. 3d —, 2011 WL 5375074 (Fla. 3d DCA 2011) (trial court's denial of Rule 3.800(c) motion is not appealable); Pillajo v. State, 60 So. 3d 565, 566 (Fla. 2d DCA 2011) (appellate court has no jurisdiction to review exercise of trial court's discretion in ruling on Rule 3.800(c) motion); Edwards v. State, 53 So. 3d 1131 (Fla. 1st DCA 2011) (same). Because the motion was filed and reached final disposition before Petitioner's conviction became final, on July 15, 2003, Petitioner would not receive any tolling benefit from this motion.

On March 25, 2005, after another **129 days** of the federal limitations period expired, Petitioner filed a habeas petition in the First DCA alleging ineffective assistance of appellate counsel.  Respondent concedes this was a tolling post-conviction application (doc. 34 at 5).  The application was pending until August 29, 2005, when the First DCA denied Petitioner's motion for rehearing.[7]

On September 15, 2005, after another **16 days** of the federal limitations period expired, Petitioner filed a second Rule 3.800(a) motion, which Respondent concedes was a tolling motion (doc. 34 at 5).  That motion was pending until April 17, 2007, when the First DCA issued the mandate affirming the circuit court's decision.  However, while the Rule 3.800(a) motion was pending, Petitioner filed a motion in the state circuit court seeking permission to file a belated Rule 3.850 motion, with an accompanying Rule 3.850 motion, which the state circuit court granted, recognizing Petitioner's Rule 3.850 motion as timely filed on June 29, 2007.  Respondent contends Petitioner's motion seeking permission to file the belated Rule 3.850 motion was not a tolling motion under Kholi (doc. 34 at 5–6); therefore, Petitioner is not entitled to tolling from April 17, 2007 to June 29, 2007.  The undersigned assumes, without deciding, that the motion for permission to file a belated Rule 3.850 motion was a tolling application.  The disposition of that motion and the filing of the Rule 3.850 motion itself occurred on the same day (*see* Ex. Z), and the Rule 3.850

---

[7] The state habeas proceeding was not pending during Petitioner's improper attempt to invoke the Florida Supreme Court's jurisdiction.  *See* Carey v. Saffold, 536 U.S. 214, 219–20, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002) (holding that a state application for post-conviction relief is "pending" within the meaning of 28 U.S.C. § 2244(d)(2), "as long as the ordinary state collateral review process is 'in continuance' i.e., 'until the completion of' that process."); Wade v. Battle, 379 F.3d 1254, 1262 (11th Cir. 2004) (same); *see also, e.g.,* Bismark v. Sec'y Dep't of Corr., 171 F. App'x. 278, 280 (11th Cir. 2006) (holding that petitioner's unsuccessful attempt to invoke the discretionary jurisdiction of the Florida Supreme Court to review the appellate court's per curiam affirmance of the denial of post-conviction relief had no tolling effect on the federal limitations period, because such relief is not available under Florida law); Rich v. Tucker, No. 3:10cv517/MCR/MD, 2011 WL 7068972, at *5 (N.D. Fla. Dec. 9, 2011), *Report and Recommendation Adopted by,* 2012 WL 170754 (N.D. Fla. Jan. 20, 2012) (same); Dotson v. Buss, No. 3;08cv489/LAC/CJK, 2011 WL 2581448, at *4–5 (N.D. Fla. June 21, 2011), *Report and Recommendation Adopted by,* 2011 WL 2581446 (N.D. Fla. June 30, 2011) (same); Morrow v. McNeil, No. 5:09cv225/SPM/MD, 2010 WL 2179107, at *4 n.4 (N.D. Fla. Apr. 21, 2010), *Report and Recommendation Adopted by,* 2010 WL 2179100 (N.D. Fla. May 27, 2010) (same); Reed v. Crosby, No. 8:04cv273, 2005 WL 1862715 at *1 (M. D. Fla. Aug.4, 2005) (federal habeas limitations period not tolled during time in which petitioner "improperly sought review in the Florida Supreme Court" of state district court's per curiam denial of his state habeas petition).

Case No.:  3:10cv526/MCR/EMT

motion remained pending until February 2, 2010, when the First DCA issued the mandate affirming the lower court's decision.[8]

On February 23, 2010, after another **20 days** of the federal limitations period expired, Petitioner filed another motion for correction, reduction, or modification of sentence, pursuant to Rule 3.800(a), (c).  Respondent concedes this was a tolling motion (doc. 34 at 6).  The motion was pending until May 26, 2010, when the First DCA issued the mandate affirming the lower court's decision.

On August 31, 2010, Petitioner filed a petition for writ of habeas corpus in the state circuit court.  Respondent contends this was not a tolling motion, because it was dismissed as improperly filed as a habeas petition instead of a Rule 3.850 motion, and if construed as a Rule 3.850 motion, it was untimely and successive (*see* doc. 34 at 6).  In Pace v. DiGuglielmo, the Supreme Court held that a state post-conviction motion rejected as untimely by a state court was not "properly filed." 544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (discussing Artuz v. Bennett, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000)).  The Court held that "time limits, no matter their form, are 'filing' conditions."  *Id.* at 417.  The Court concluded:  "What we intimated in Saffold we now hold:  When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  Pace, 544 U.S. at 414 (quoting Carey, 536 U.S. at 226).

In the instant case, the state circuit court determined that if Petitioner's state habeas petition was construed as a Rule 3.850 motion, which was the proper vehicle for bringing the claims he alleged therein, it was untimely (*see* Ex. OO).  This determination of untimeliness requires the undersigned to conclude the state habeas petition was not "properly filed" and thus not a tolling motion under § 2244(d(2).

Petitioner filed his § 2254 petition on January 20, 2011, after another **238 days** of the federal limitations period expired.  A total of 563 untolled days elapsed between the date Petitioner's conviction became final and the date he filed his federal habeas petition (160 + 129 + 16 + 20 + 238 = 563), which exceeds the 365-day limitations period.

---

[8] For the reasons discussed *supra* in note 7, the Rule 3.850 motion was not pending during Petitioner's improper attempt to invoke the Florida Supreme Court's jurisdiction.

Petitioner argues he is entitled to equitable tolling of the limitations period (doc. 36 at 1–14). A petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, — U.S. —, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (citing Pace, 544 U.S. at 418) (internal quotations omitted); *see also* Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (citation omitted). Because equitable tolling is "an extraordinary remedy," it "is limited to rare and exceptional circumstances" and "typically applied sparingly." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005). Thus, the Eleventh Circuit has concluded that equitable tolling is available only "'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Id.* (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)). "As for the 'extraordinary circumstance' prong, like the Supreme Court's articulation in Holland, [the Eleventh Circuit] too ha[s] required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition. *See* San Martin v. McNeil, 633 F.3d 1257, 1267 (11th Cir. 2011) (citing Lawrence, 421 F.3d at 1226–27). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" Holland, 130 S. Ct. at 2565 (internal quotation marks and citation omitted). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." San Martin, at 1268 (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002)). "Mere conclusory allegations are insufficient to raise the issue of equitable tolling." *Id.* (citations omitted).

Petitioner identifies twenty-two "extraordinary circumstances" which he argues entitle him to equitable tolling of the limitations perios (doc. 36 at 3–13). All but three of those circumstances (enumerated by Petitioner as numbers 9, 11, and 19) arose before the federal statute of limitations began to run and, therefore, could not constitute grounds for tolling of that period.[9] Therefore,

---

[9] Circumstance 1 alleges the victim, acting as an agent of the State (due to the fact that she was on house arrest and participating in a court-ordered drug treatment program as part of her criminal sentence), removed videotapes from a "private area" and tampered with them for six days prior to giving them to the PPD, and then allegedly received an expungement of her criminal sentence (doc. 36 at 3). Petitioner has produced no evidence showing the victim's sentence was expunged or that she received favorable treatment from the State. Further, Petitioner submitted a copy of a letter to him from the State Attorney's Office advising him that information regarding the victim's criminal case, Case No.

1999-002456, was available on the clerk of court's website, and advising that their records did not reflect the victim received anything in exchange for her testimony (*see* doc. 36-2 at 18–21).

Circumstance 2 alleges the PPD viewed the tapes without a warrant and used information gained from the tapes to apply for two search warrants (doc. 36 at 3).  Circumstance 3 alleges the PPD took two taped statements from the victim and another witness without swearing them to oath (*id.*).  Circumstance 4 alleges a copy of a signed "adult consent form" was removed from his home prior to trial (*id.* at 4).  Circumstance 5 alleges the PPD chose not to "record" a threatening letter left at Petitioner's home by the victim's sister (*id.*; *see also* doc. 5-2 at 63–64).

Circumstance 6 alleges the prosecutor sent a memo to an Investigator Doyle of the PPD instructing him to add "May 2, 2000" to the affidavit for search warrant, to indicate the date the victim discovered the videotapes (doc. 36 at 4).  After trial, Petitioner sent requests to the PPD for a copy of the alleged memo, but the PPD responded that no such memo existed (*see* doc. 5-1 at 14–17; doc. 36-2 at 14–17).  Petitioner attempts to prove the existence of the memo by re-creating it in his own handwriting (doc. 5-1 at 18).  He also submitted a copy of an envelope addressed from him to his son, which allegedly contained a copy of the alleged memo (doc. 5-1 at 19).  The post office indicated the envelope was empty when it was received; and Petitioner alleges prison officials removed the contents (doc. 36 at 4).  Petitioner's submissions are insufficient to show that the memo ever existed.

Circumstance 7 alleges either the victim or the prosecutor destroyed an alleged contract in which the victim consented to appear in videotapes (doc. 36 at 4–5).  Petitioner submits no evidence, other than his own self-serving trial testimony, that this contract actually existed.  Circumstance 8 alleges the PPD never returned an address book, which was seized from a truck in Tennessee, which Petitioner needed in order to contact a witness who had signed a similar contract (*id.* at 5).

Circumstance 10 alleges the prosecutor and two judges involved in the pre-trial and trial proceedings were familiar with the victim through domestic violence proceedings, a child abuse proceeding, and the victim's criminal proceedings, and Petitioner states it "appear[s] that favors were passed for lightness of sentence which they sealed and tried to hide" (doc. 36 at 6).  Again, Petitioner presents no factual support for this assertion of favorable treatment.

Circumstance 12 alleges the trial judge made racist statements during the sentencing hearing, showing he was biased against Germans (doc. 36 at 6; doc. 36-2 at 29).  Circumstance 13 alleges the prosecutor mischaracterized the evidence to the jury (doc. 36 at 6–7).

Circumstance 14 alleges Fred Parker, a fellow inmate who testified that Petitioner made statements to him about the sexual batteries, was planted by the State to obtain Petitioner's admissions (doc. 36 at 7).  Petitioner and defense counsel discovered information about Mr. Parker's contacts with the prosecutor's office shortly after trial and before sentencing, and it was the subject of the defense's motion for new trial (*see* doc. 36-2 at 32–46, 63–64).

Circumstance 15 alleges the trial court erred by not releasing a sleeping juror (doc. 36 at 7).  Circumstance 16 alleges the trial court was biased by letters attached to defense counsel's motion to withdraw filed after trial and before the hearing on the motion for new trial and sentencing (*id.*).  Circumstance 17 alleges the court erred at the hearing on the motion for new trial by considering the prosecutor's speculative argument (*id.* at 7–8).  Circumstance 18 alleges the State "prevented" the defense from calling a certain witness, Mr. Depirro, at the hearing on the motion for new trial by failing to inform the defense that Mr. Depirro had been released from incarceration (*id.* at 8).  Circumstance 20 is a nonsensical allegation that the State pressured the victim to "proceed" with the criminal case because Petitioner's wife, Mrs. P. Rupprecht, had an internet affair with a Mr. C. Ross, who drew nude sketches of her (*id.* at 10–11; *see also* doc. 41).

Circumstance 21 alleges the PPD and the prosecutor, with the assistance of defense counsel, viewed the videotapes seized from Petitioner's home, "extracted" scenes they deemed relevant to the charges, and showed them to

further discussion of circumstances 1–8, 10, 12–18, and 20–22, is not warranted.

In circumstances 9 and 11, Petitioner reasserts his argument that he did not receive a copy of the transcript of the pre-trial suppression hearing until 2007 (doc. 36 at 5, 6).  However, as discussed *supra*, the transcript was available in November of 2000; Petitioner simply did not obtain it until 2007.  Petitioner has not shown that his failure to obtain the transcript sooner was a "rare and exceptional circumstance" that was unavoidable with reasonable diligence.  Circumstance 11 also alleges the trial court failed to rule on a pre-trial motion in limine, and the federal limitations period should be tolled until the trial court does so (*id.* at 6).  This circumstance does not warrant equitable tolling, because the defense's failure to obtain a ruling was avoidable with reasonable diligence.

The only remaining circumstance which warrants further consideration is circumstance 19 (doc. 36 at 8–9).  Petitioner states in 2004, he sought advice from an attorney, Patrece Cashwell, to determine whether there were any issues warranting a state post-conviction motion in his case (doc. 36 at 9).  Petitioner states in 2005, he retained another attorney, Kirk Owens, to file a Rule 3.850 motion on his behalf, but Owens abandoned him and eight other clients and left the State of Florida (doc. 5 at 32; doc. 36 at 9; *see also* doc. 36-2 at 21).  Petitioner states he filed a complaint against Mr. Owens with The Florida Bar in September of 2005 (*see* doc. 5 at 4; *see also* doc. 36-2 at 21).  The Florida Bar informed him Mr. Owens was no longer permitted to practice law in the State of Florida (*see* doc. 36-2 at 21).  Petitioner states an attorney, Mr. Jarvis, was appointed to obtain his records from Mr. Owens (doc. 5 at 59).[10]

---

the jury (doc. 36 at 11).  He also alleges the videotapes could have been "redacted" by the PPD to delete scenes of the victim scooting out of bed and walking into the bathroom, which would have demonstrated she was not incapacitated or helpless to resist; rather, she was simply intoxicated (*id.* at 11–13).  However, at trial, the parties agreed that redacted versions of the tapes would be published to the jury; further, Petitioner stated that he himself edited some of the tapes (Ex. C at 315–34, 348–49).  In Circumstance 21, Petitioner additionally contends defense counsel performed ineffectively by informing the prosecutor that the State misidentified the victim in one of the sexual battery counts, which caused the State to nolle pros that charge (doc. 36 at 11).

Circumstance 22 repeats Petitioner's unsupported assertion that the prosecutor destroyed an alleged contract in which the victim consented to appear in the videotapes (doc. 36 at 13–14).  He also asserts the prosecutor lied during the hearing on the motion for new trial, when he stated he did not know prior to trial that Fred Parker was a "snitch" (*id.* at 14).

[10] Mr. Owens was convicted of grand theft, apparently in connection with his conduct involving Petitioner (*see* doc. 5-2 at 1).  *See* <u>State v. Owens</u>, Escambia County Circuit Court, Case No. 2007 CF 002148, online docket sheet.

The Supreme Court's decision in <u>Holland v. Florida</u>, involved a missed one-year deadline, prescribed by 28 U.S.C. § 2244(d), for filing a federal habeas petition.  130 S. Ct. at 2564.  <u>Holland</u> presented two issues:  first, whether the § 2244(d) time limitation can be tolled for equitable reasons, and, second, whether an attorney's unprofessional conduct can ever count as an "extraordinary circumstance" justifying equitable tolling.  130 S. Ct. at 2554, 2562–63 (internal quotation marks omitted).  The Supreme Court answered yes to both questions.

On the second issue, the Court recognized that an attorney's negligence, for example, miscalculating a filing deadline, does not provide a basis for tolling a statutory time limit.  130 S. Ct. at 2564; *id.* at 2567–68 (Alito, J., concurring in part and concurring in judgment); *see* <u>Lawrence</u>, 549 U.S. at 336.  The <u>Holland</u> petitioner, however, urged that attorney negligence was not the gravamen of his complaint.  Rather, he asserted that his lawyer had detached himself from any trust relationship with his client:  "[My lawyer] has abandoned me," the petitioner complained to the federal habeas court.  130 S. Ct. at 2555 (brackets and internal quotation marks omitted).

In a concurring opinion in <u>Holland</u>, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.  130 S. Ct. at 2567–68.  Holland's argument fit the latter category:  he alleged abandonment "evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years."  *Id.* at 2568; *see id.* at 2555–56, 2564–65 (majority opinion).  If true, Justice Alito explained, "petitioner's allegations would suffice to establish extraordinary circumstances beyond his control[:]  Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."  *Id.* at 2568.

In this case, the record shows that Petitioner retained Patrece Cashwell in September of 2003 only for the purpose of reviewing the record and identifying any viable claims of claims of ineffective assistance of trial counsel that could be asserted in a Rule 3.850 motion (*see* Ex. RR; *see also* doc. 48-4 at 17).  In a letter form Ms. Cashwell to Petitioner's brother, dated November 17, 2003, Ms. Cashwell states, in relevant part:

> I enjoyed the opportunity to search for possible errors to support a potential claim by your brother of ineffective assistance of counsel.  I only researched possible appellate issues at the STATE level.  It is my understanding that any Federal Appeals

such as a Writ of Habeas Corpus shall be taken care of by your brother.  I am not certified to practice in Federal Court, hence this stipulation. . . Therefore, any time deadlines for Federal matters will have to be abided to by your brother.  I have been retained solely to review the effectiveness (or lack of effectiveness) of the Trial Counsel, Glen Arnold and Mike Rollo.  Please allow this letter to serve as a summary of my findings with the attached exhibits to support those findings.

. . . .

. . . In summary, there are grounds for an appeal based upon ineffective assistance of counsel and the best remedy to be hoped for would be a new trial in which the defense of consent might be better presented and the State prevented from unfairly leading the witnesses and characterizing the evidence.  The time deadline according to the Florida Rule of Criminal Procedure 3.850 is 2 years after the judgment and sentence become final.  Please be aware of that deadline as well as any Federal deadlines your brother may be considering.

If I may be of any further assistance please let me know.  Please let me know what you would like me to do with the transcripts and other documents your brother has provided.

(Ex. RR).  Ms. Cashwell sent Petitioner a copy of her letter (*id.*).

Neither Petitioner's allegations nor the record suggest unprofessional conduct on the part of Ms. Cashwell.  Therefore, he has not shown any grounds for equitable tolling during the period of her involvement in his case.  *See* Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1070 (11th Cir. 2011).

Equitable tolling is appropriate, however, based upon Mr. Owens's conduct.  According to Petitioner, Mr. Owens led him to believe he would file a Rule 3.850 motion.  Owens then abandoned Petitioner's case without notice.  Petitioner became aware of the abandonment when he received a letter from the Florida Bar on June 27, 2006, stating that Owens had been suspended from The Florida Bar on March 13, 2006, and after that date was no longer able to practice law in the State of Florida (doc 48-4 at 41).  Two months after that notification, on September 5, 2006, Petitioner filed a pro se motion in state court seeking permission to file a belated Rule 3.850 motion.  The state court granted permission on June 29, 2007, and deemed his motion filed on that date.  The

undersigned concludes Mr. Owens's conduct warrants tolling of the limitations period from January 1, 2005, to June 29, 2007.[11]

However, Petitioner has not shown a nexus between Mr. Owens's abandonment and the late filing of his § 2254 petition. Petitioner admits that as of December 11, 2010, a month before he filed his § 2254 petition, he "ha[d] not the foggiest idea what if any time remains" on the federal time clock (doc. 1 at 4). Petitioner's allegations do not suggest he asked Mr. Owens for advice about the federal limitations period, mentioned the federal limitations period to Owens, or that he (Petitioner) made any effort to determine when the federal limitations period began or may have expired.

Moreover, giving Petitioner the benefit of equitable tolling from January 1, 2005 to June 29, 2007, to account for Mr. Owens's abandoning him while he was attempting to pursue the Rule 3.850 process, Petitioner's federal petition is still time-barred. As previously discussed, the factual predicate of each of Petitioner's federal claims challenging his judgment of conviction and sentence could have been discovered through the exercise of due diligence prior to July 15, 2003, the date his conviction became final. Further, upon final disposition of Petitioner's state post-conviction motions, on or before February 2, 2010, his federal claims were exhausted or technically exhausted, and he was thus in a legal position to file his § 2254 petition. As of that date, February 2, 2010, Petitioner had sixty (60) days remaining on the federal clock.[12] He did not file his federal petition within that time. Therefore, giving Petitioner the benefit of equitable tolling from January 1, 2005 to June 29, 2007, to account for Mr. Owens's abandoning Petitioner while he was attempting to pursue the Rule 3.850 process, Petitioner's federal petition is still time-barred under § 2244(d).

Petitioner additionally argues he is entitled to federal review of his petition through an "actual innocence" or "fundamental miscarriage of justice" gateway to the time bar. An "actual innocence" exception to the AEDPA's one-year time limit, if such an exception exists, requires the petitioner (1) to present new reliable evidence that was not presented at trial, and (2) to show that

---

[11] January 1, 2005 is the earliest date Petitioner states he retained Mr. Owens (*see* doc. 5 at 32). The undersigned will give him the benefit of this date, even though his filings with The Florida Bar suggest Mr. Owens was retained later in 2005 (*see* doc. 48-4 at 45–46).

[12] Only 160 elapsed from the date his conviction became final to the date he filed his first tolling motion, on December 23, 2003; and an additional 46 days elapsed from final disposition of that motion to January 1, 2005, the earliest date Petitioner retained Mr. Owens.

it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence.  *See* Rozzelle v. Sec'y, Fla. Dep't of Corr., — F.3d —, 2012 WL 630204, at *9 (11th Cir. Feb. 20, 2012) (quoting Schlup v. Delo, 513 U.S. 298, 324, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995)).  To be credible, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  Schlup, 513 U.S. at 324.

In the instant case, Petitioner asserts that one of the State's witness, Fred Parker, Jr., admitted he testified in Petitioner's case and the criminal cases of three other jail inmates in the hope of obtaining favorable treatment from the State in Parker's own criminal case (doc. 36 at 6–8; doc. 38). Petitioner contends the State did not disclose evidence that Mr. Parker was a witness or potential witness in other cases until ten (10) days after Petitioner's trial (*see* doc. 5-1 at 6).  At that point, Petitioner's trial counsel, Mr. Arnold, filed a motion for new trial based upon the discovery of this new evidence, and deposed two inmates, Vince Depirro and Michael McNair, both of whom stated Mr. Parker bragged to them about testifying falsely against other inmates to obtain favorable treatment from the State.  Prior to the hearing on the motion for new trial, Mr. Arnold was permitted to withdraw, and Mr. Michael Rollo was appointed to represent Petitioner.  Mr. Rollo was aware of all of these facts (*see* doc. 36-2 at 1–3, 36–47).  The trial court denied the motion for new trial (*id.*).

Evidence that Mr. Parker had a motive for testifying against Petitioner is not of the nature contemplated in Schlup.  It is not exculpatory evidence that demonstrates Petitioner did not commit the sexual batteries of which he was convicted.  Further, the jury was presented with evidence that Mr. Parker's testimony was motivated by his desire for favorable treatment by the State (Ex. C at 211–17).  At trial, a letter from Mr. Parker to the State Attorney's Office was admitted into evidence (Ex. C at 211–14).  Mr. Parker admitted he asked the State Attorney's Office to allow him to go to a restitution center instead of serving the remainder of his six-year prison term (*id.* at 214–17). Additionally, Mr. Parker admitted he had been convicted of thirteen felonies, three of which involved crimes of dishonesty (*id.* at 215).  Petitioner has failed to show it is more likely than not that no reasonable juror would have convicted him in light of additional evidence of Mr. Parker's

self-serving motive to testify.  Therefore, Petitioner failed to demonstrate he is entitled to federal review of his claims through the fundamental miscarriage of justice gateway.

III.    CONCLUSION

Petitioner filed his § 2254 petition after the one-year federal limitations period expired, even considering the tolling effect of properly filed applications for state post-conviction relief filed prior to expiration of the federal limitations period, and the tolling effect of post-conviction counsel's abandonment of Petitioner's case.  Further, Petitioner failed to demonstrate he is entitled to federal review of his claims through the fundamental miscarriage of justice gateway. Therefore, the § 2254 petition should be dismissed with prejudice as time-barred.

IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

1.      Petitioner's "Motion to Expose to Court Newly Discovered Evidence" (doc. 38) and "Motion to Clarify" (doc. 41) are **GRANTED ONLY TO THE EXTENT THAT** the court has considered the facts and arguments included therein.

2.      Petitioner's motion for hearing (doc. 39) on the "Motion to Expose to Court Newly Discovered Evidence" is **DENIED**.

3.      Petitioner's "Motion to Quash State's Motion to Dismiss as Untimely" (doc. 42) is **DENIED**.

And it is respectfully **RECOMMENDED**:

1.      That Respondent's motion to dismiss (doc. 34) be **GRANTED**.

2.      That the petition for writ of habeas corpus (doc. 5) be **DISMISSED** with prejudice as untimely.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of March 2012.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

        Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).